# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM JACKSON, et al., ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 24-cv-03576 |
| ) | |
| VILLAGE OF WINNETKA, an Illinois home ) | |
| rule municipality, ) | Judge: Hon. LaShonda Hunt |
| Defendant. ) | |

## DEFENDANT VILLAGE OF WINNETKA'S AMENDED OPPOSED RULE 12(B)(6) MOTION TO DISMISS

Defendant, Village of Winnetka (*"Village"*), by and through its attorneys, Elrod Friedman LLP, and pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss Plaintiffs' Complaint (*"Complaint"*) (attached as **Exhibit A**) in its entirety. This motion is opposed. The Village has conferred with Plaintiffs and agreed on the following proposed briefing schedule: Plaintiffs shall have until July 12, 2024 to file a Response Brief; and the Village shall have until August 2, 2024 to file a Reply Brief in Support of this Motion.

## INTRODUCTION

On February 6, 2024, the Village of Winnetka adopted Ordinance MC-01-2024 (*"Ordinance"*) (**Exhibit B**[1]). The Ordinance added new zoning regulations related to development in the portion of the Village immediately adjacent to Lake Michigan (*"Lakefront Regulations"*). The Lakefront Regulations were adopted for many proper public purposes, as explicitly identified and described in the Ordinance. Exhibit B, pp. 1, 2 & §17.82.010.

Plaintiffs all own unidentified properties along the lakefront and do not agree with the Village Council's unanimous legislative decision to adopt the Lakefront Regulations. Rather than

---

[1] The Court may take judicial notice of ordinances when ruling on a motion to dismiss. *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977). The copy of the Ordinance attached to the Complaint was not certified. Attached to this Motion as Exhibit B is a certified copy of the Ordinance.

propose any specific development plans or seek any specific approvals allowed under the Ordinance, Plaintiffs ask the Court to invalidate the Ordinance in its entirety and to award Plaintiffs hundreds of millions of dollars in compensation. Compl., p. 4.

The Complaint has three counts: Count II (the only federal claim) alleges that the mere enactment of the Ordinance somehow amounts to an unconstitutional taking of each of Plaintiff's individual properties under the Takings Clause of the Fifth Amendment. Count III alleges the same takings under Article I, Section 15 of the Illinois Constitution. Count I alleges that the Ordinance violates Plaintiffs' substantive due process rights under Article I, Section 2 of the Illinois Constitution.

The Complaint is fatally flawed. Most fundamentally, the federal takings claim in Count II is not ripe. The United States Supreme Court, 7th Circuit, and its District Courts have consistently held that mere enactment of a zoning ordinance does not constitute a taking. Rather, strict ripeness rules mandate that before filing suit Plaintiffs were required to propose development plans and be denied any necessary exceptions, variances, or special uses that the Ordinance authorizes. None of these actions took place. Count II is therefore not ripe and should be dismissed.

Both takings claims are deficient for other reasons as well. Plaintiffs cannot bring takings claims based on their allegations that the Ordinance diminishes the value of only a portion of their properties. Plaintiffs also cannot bring takings claims without identifying how the Ordinance impacts each of the Plaintiffs' specific properties. Nowhere does the Complaint even allege which properties Plaintiffs own.

In Count I, Plaintiffs allege that the Ordinance is facially invalid under the Illinois Constitution substantive due process provisions because the Village Trustees did not engage in some undefined level of analysis of the *LaSalle/Sinclair* factors prior to adopting the Ordinance.

No such requirement exists under Illinois law and the *LaSalle/Sinclair* factors do not apply in any event to Plaintiffs' facial challenge to the Ordinance.

Plaintiffs obviously believe that they should be allowed to undertake development of their respective properties unfettered by any new zoning regulations. The Village Council made a different legislative judgment. Plaintiffs' disagreement with the Village Council's legislative enactment does not justify the facial invalidation of the Ordinance, an ordinance that was unanimously adopted pursuant to proper and public procedures that are not challenged in any way. Plaintiffs' recourse is through the ballot box and the local political and legislative process, not through an extraordinary judicial request of the federal court to strike down a home rule municipality's presumptively valid legislative enactment and order hundreds of millions of dollars in so-called compensation.

## STATEMENT OF FACTS[2]

The Village and its residents have long prized the Lake Michigan lakefront and its bluffs as a critical part of the Village's ecology and character. Exhibit B, p. 1. For more than a year before the adoption of the Ordinance, the Village Council studied the adoption of the Lakefront Regulations. Compl., ¶8; Ex. B, p. 1. The Village Council went to great lengths to seek public input and guidance from experts on how best to balance the need to protect property rights while also appropriately planning and protecting the integrity of the lakefront. Ex. B, p. 1. The process was deliberate, measured, and public. The Village Council established a study and permit abeyance period and held no less than six public meetings over more than a year to discuss the Lakefront Regulations prior to adoption. The Village Council took extensive public comment and testimony. Compl., ¶¶8-14, 17, 19-22, 24. The Village hired a coastal engineer to advise the Village Council

---

[2] The Village accepts the well pled allegations in the Complaint only for purposes of this Motion to Dismiss. The Village reserves the right to deny each and every allegation in any subsequent responsive pleading.

as it developed the Lakefront Regulations. Ex. B, p.1. The Village Council studied similar lakefront regulations adopted by almost every Illinois municipality located along Lake Michigan. Compl., ¶ 63. And, the Village Council considered numerous drafts of the Ordinance and "made several modifications to the proposed regulations to address concerns and the evidence provided during the Public Hearing." Compl., ¶ 21; Ex. B, p. 2. After this thorough process, the Village Council unanimously adopted the Ordinance on February 6, 2024.

The Ordinance establishes and defines a "Steep Slope Impact Area," "Steep Slope Zone," and "Slope Transition Area" (Compl., ¶ 49; Ex. B, p. 11) and includes reasonable development standards to properly plan and protect the integrity of the lakefront and its bluffs when property owners desire to undertake construction in these important and sensitive areas. Exhibit B, §§17.82.030, 17.82.040, 17.82.050. The new regulations are also consistent with the Village's Comprehensive Plan. *Id.*, p. 2.

Plaintiffs inaccurately allege that property owners cannot "develop on the most valuable portions of their land," thereby supposedly denying Plaintiffs of "all economically beneficial or productive use of their land in the steep slope zone" (Compl., ¶¶ 90, 131-33, 143-44). To the contrary, as explained in the Ordinance:

> [T]he regulations established by this Ordinance provide protections for the lakefront and allow options for property owners to develop the portions of their property in the Slope Impact Area, and the regulations further provide flexibility by authorizing property owners to seek variations, waivers, and special use approvals from and pursuant to the new regulations.

Ex. B, p. 2. The Ordinance provides a multitude of ways for property owners to potentially build in the Steep Slope Zone and other areas protected by the Ordinance. For example:

- The Ordinance provides that "[a]ny development that is authorized pursuant to the Village Code, this Title, or other ordinance or regulations of the Village, may occur in the slope transition area if approved by the Director" provided that the development meets certain standards set forth in Section 17.82.050 of the Ordinance (Ex. B, §17.82.030);

- The Ordinance allows property owners to build boat houses, mechanical or electric lifts, fences, decks, and stairs in the Steep Slope Zone (*id.*, §17.82.040.E-I), and boat houses do not have to comply with normal setback requirements and can be located all the way to the toe of the bluff;

- The Ordinance allows property owners to keep existing structures even if they do not comply with the new regulations (*id.*, §17.82.040.C). All existing structures are thus grandfathered in and can remain;

- Unlike any similarly situated legally nonconforming structures in the Village, the Ordinance authorizes lakefront property owners to completely rebuild, or completely replace, any structures existing as of February 7, 2024, provided that the new structures are constructed within the footprint of existing structures, even if the dimensions of the existing footprint do not comply with other provisions of the Zoning Ordinance (*id.*, §17.82.040.C);

- The Ordinance allows property owners to obtain exceptions to build in ways that do not meet all of the Lakefront Regulation standards in conjunction with a request for a special use permit (*id.*, §17.82.110); and

- The Ordinance allows property owners to seek variations from the Lakefront Regulations to develop in the Steep Slope Zone and in the Slope Transition Area in order to allow the potential for construction that does not comply with the otherwise applicable provisions of the Ordinance. Further, the Ordinance expressly allows the Zoning Board of Appeals (the Village advisory body that holds public hearings and makes recommendations to the Village Council on variations) to find that a practical difficulty or an unreasonable hardship exists if the Lakefront Regulations "materially restrict the ability of a property to be developed or materially increase the cost of such development" (*id.*, §17.82.100).

Contrary to the allegations in the Complaint, Plaintiffs have the opportunity to develop within the protected areas of their respective properties in myriad ways provided that they follow the procedures and obtain the authorized relief pursuant to the standards set forth in the Ordinance.

Yet Plaintiffs have not alleged that they have (i) submitted any development plans to the Village since the adoption of the Ordinance for any of their properties, (ii) applied for any variations, exceptions, or waivers from the Lakefront Regulations, or (iii) been denied any building permits or zoning approvals to undertake any construction activity on any of their properties. These facts, or lack thereof, are fatal to each of Plaintiffs' claims.

## ARGUMENT

### I.    Standard of Review

A motion to dismiss should be granted if a plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). For purposes of a motion to dismiss, the Court takes all facts alleged as true and draws all reasonable inferences from those facts in the plaintiffs' favor. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). "[B]ut legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *KAP Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022).

## II.     Plaintiffs Have Not Plead a Federal Takings Claim

Plaintiffs allege in Count II (their only claim that arises under federal law and this Court's original jurisdiction), that Village enactment of the Ordinance constitutes an unconstitutional taking because it has allegedly denied Plaintiffs all economically beneficial or productive use of the portion of each of their properties located in the Steep Slope Zone. Compl., ¶¶ 131, 133.

Count II should be dismissed because it is fundamentally flawed in at least three ways: (i) the claim is not ripe because Plaintiffs have failed to seek available relief; (ii) Plaintiffs improperly allege a taking based on the diminution of value of only a portion of their properties; and (iii) Plaintiffs' conclusory allegations ignore the plain and unambiguous provisions of the Ordinance.

### A.     Count II Is Not Ripe

Plaintiffs' federal takings claim is not ripe because none of the Plaintiffs have applied for or been denied any of the available relief under the Ordinance.

For decades, the Supreme Court, 7th Circuit, and its District Courts have made clear that takings claims are not ripe for judicial review until a property owner applies for and is denied available zoning relief through variations or other forms of local remedies. *Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 535 U.S. 302, 339-40 (2002); *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 297 (1981); *Agins v. Tiburon*, 447 U.S.

255, 260 (1980); *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 194-95 (1985), overruled on other grounds by *Knick v. Twp. Of Scott,* 139 S. Ct. 2162, 2169 (2019); *Willan v. Dane Cty.,* 2021 U.S. App. LEXIS 28403, *6-7 (7th Cir. 2021); *General III, LLC v. Arwady*, 2021 U.S. Dist. LEXIS 121388, *7-18 (and cases cited therein). For example, in *Tahoe-Sierra Preservation Council*, the Supreme Court explained that, "[u]nder our ripeness rules, a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law." 535 U.S. at 339-40. Thus, "until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established." *Id.* at 340.

The Supreme Court specifically applied this rule to restrictions on "steep slope" zones. In *Hodel v. Va. Surface Mining & Reclamation Ass'n,* the appellant challenged a provision of the Surface Mining Act that imposed steep slope regulations on surface mining operators, claiming that the regulations constituted a taking because they diminished the value of the steep slope land to "practically nothing." 452 U.S. at 293. The Supreme Court rejected the takings claim outright, finding it was not ripe for judicial review, explaining:

> There is no indication in the record that appellees have availed themselves of the opportunities provided by the Act to obtain administrative relief by requesting either a variance from the approximate-original-contour requirement of § 515 (d) or a waiver from the surface mining restrictions in § 522 (e). If appellees were to seek administrative relief under these procedures, a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions. The potential for such administrative solutions confirms the conclusion that the taking issue decided by the District Court simply is not ripe for judicial resolution.

*Id.* at 297.

Here, the takings claim suffers from the exact same defects repeatedly identified by the

Supreme Court as a gravamen of takings jurisprudence. The Ordinance provides Plaintiffs numerous types of approvals that could allow various development options in the Steep Slope Zone and Slope Transition Area. The Ordinance expressly allows Plaintiffs to apply for variations, exceptions, and waivers from various requirements in the Lakefront Regulations. Exhibit B, §§ 17.82.050, 17.82.100, and 17.82.110. Plaintiffs cannot ignore these available options. Their existence and applicability in the Ordinance, and Plaintiffs failure to avail themselves of any of them, dooms the federal takings claim as not ripe and thus the Court lacks subject matter jurisdiction over this claim. For this reason, Count II should be dismissed.

### B.  Count II Cannot be Based on Only a Portion of a Property

Even if Count II was somehow ripe for adjudication, it still must be dismissed because Plaintiffs allege only a diminution of value of a portion of their respective properties, and not their respective properties as a whole. Complaint, ¶ 133.

The Supreme Court has rejected attempts by litigants who bring takings claims based on the impact of land use regulations to only a portion of an owner's property, even when those regulations prohibit all building on that portion. As explained in *Tahoe-Sierra Preservation Council*, "[t]aking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." 535 U.S. at 327. The *Tahoe* court further explained, "[t]his requirement that 'the aggregate must be viewed in its entirety' explains why, for example ... restrictions on the use of only limited portions of the parcel, such as set-back ordinances, ... were not considered regulatory takings." *Id.*

The Supreme Court reaffirmed this rule in *Murr v. Wisconsin*, 582 U.S. 383 (2017). In *Murr*, the plaintiffs owned one lot and subsequently came into ownership of the neighboring lot. *Id.* at 390. Wisconsin's law prevents the use of multiple lots as separate building sites unless they each have at least one acre of land suitable for development. *Id.* at 389. Because plaintiffs' lots

were under one acre, plaintiffs were required to use the two properties as a single buildable lot. *Id.* The plaintiffs' alleged that the Wisconsin law was a regulatory taking because it deprived them of "all, or practically all, of the use of [one of their lots]." *Id.* at 390-91. The Court rejected this takings claim, explaining that "the Court has declined to limit the parcel in an artificial manner to the portion of property targeted by the challenged regulation." *Id.* at 396; *see also, Penn Central Transp. Co. v. New York City*, 438 U. S. 104, 130 (1978) ("Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated").

Plaintiffs' takings claim suffers from the same defect as the takings claim in *Murr*. Plaintiffs do not allege that their entire parcel has been rendered valueless; rather, they allege that the Ordinance has caused a diminution of value in a small portion of their property. Compl., ¶¶ 131, 133. They have not and cannot allege that the remainder of their lakefront properties that sit atop the bluffs and extend further landward are all somehow now valueless. The Ordinance does not require lakefront property owners to tear down or remove any homes or other structures on their properties, whether in the Steep Slope Zone or not. No matter how liberally the pleadings standards are construed, the adoption of the Ordinance cannot have plausibly rendered the Plaintiffs' entire parcels valueless. Count II should be dismissed for this reason as well.

### C. Count II Ignores the Express Provisions of the Ordinance

Plaintiffs' federal takings claim should also be dismissed because Plaintiffs have completely ignored many of the express provisions of the Ordinance and, instead, base their claim on bare and plainly erroneous conclusory allegations.

Plaintiffs' principal takings allegation—that Plaintiffs cannot develop in the Steep Slope Zone—ignores the express provisions of the Ordinance. The Ordinance plainly permits owners to keep any existing structures that are located in the Steep Slope Zone, rebuild and replace structures

in the Steep Slope Zone, and construct boat houses, mechanical or electric lifts, fences, decks, stairs, and any other structures that meet certain standards set forth in the ordinance. Ex. B, §§ 17.82.30, 17.82.040.C, 17.82.040.E-I. Thus, Plaintiffs' legal conclusion that they are not permitted to build in the Steep Slope Zone, and their baseless conclusion that the Ordinance renders their Steep Slope Zone properties worthless, should be disregarded because it is not a sufficient basis to state a takings claim.

Plaintiffs also fail to offer any detailed factual allegations about the diminution of value of their properties. Plaintiffs group all of the Plaintiffs' properties together and merely conclude that the Ordinance is expected to reduce "each Plaintiff's property value in the millions of dollars," but do not support this conclusion with any facts. Compl., ¶ 132. Amazingly, Plaintiffs do not even identify which properties Plaintiffs own or claim are damaged. Plaintiffs identify themselves and allege they own property in the Village that "***may*** be negatively impacted by [the Ordinance]," but they do not plead which parcels or addresses are at issue. Compl., p. 1 & ¶¶ 1,3 (emphasis added).

For all of these reasons, Count II should be dismissed.

### III. Plaintiffs Have Not Properly Plead any Valid State Law Claims

In addition to bringing a federal takings claim, Plaintiffs also ask the Court to exercise jurisdiction over two Illinois state supplemental claims: (i) Count III, in which Plaintiffs allege that the Ordinance violates the takings clause of the Illinois Constitution; and (ii) Count I, in which Plaintiffs allege that the Ordinance violates their Illinois substantive due process rights.

It is the well-established law of this circuit that the usual practice is to dismiss state supplemental claims whenever all federal claims have been dismissed prior to trial. *Groce v. Eli Lilly & Co.,* 193 F. 3d 496, 501 (7th Cir. 1999). Accordingly, this court is well within its discretion to dismiss the state law claims in Counts I and III as a result of the dismissal of Count II.

However, the Seventh Circuit has recognized an exception to this usual practice when it is

4862-9553-2739, v. 9                                    10

absolutely clear how the remaining pendant state claims should be decided or when the state claims are patently frivolous. *Id.*, at 1251-2; *Young-Smith v. Holt*, 575 Fed. Appx. 680, 683 (7th Cir. 2014) (instead of relinquishing the state court claims, court has power to retain jurisdiction so that it can dismiss outright a frivolous state-law claim). Here, to avoid the unnecessary costs and for judicial economy, the Court should also dismiss the Plaintiffs' state law claims because they too are fatally flawed.

### A. Plaintiffs Have Not Plead an Illinois Takings Claim (Count III)

In Count III, Plaintiffs claim that the mere enactment of the Ordinance violates the takings clause of the Illinois Constitution. Illinois Const. Art I § 15. This state takings claim suffers from the exact same defects as the federal takings claim in Count II.

Article I, Section 15 of the Illinois Constitution provides that "property shall not be taken or damaged for public use without just compensation." Illinois Const. Art I § 15. The Illinois takings clause has two prongs.

First, it requires compensation from the government when there is "a direct physical disturbance" of an owner's property that causes a loss of value. *Muscarello v. Winnebago County Bd.*, 702 F.3d 909, 913 (2012). This prong is inapplicable because Plaintiffs do not allege any physical damage to any of their properties caused by the Village.

Second, it requires compensation for regulatory takings. *Forest Preserve District v. West Suburban Bank*, 161 Ill. 2d 448, 493, 497 (1994). As it relates to regulatory takings, the Illinois Constitutional takings provision is interpreted in the same manner and in lockstep with the federal Constitutional takings provision. *Hampton v. Metro. Water Reclamation Dist. of Greater Chi.*, 2016 IL 119861, ¶¶ 9–10. "Therefore, United States Supreme Court decisions regarding what constitutes a taking are relevant for purposes of determining whether a plaintiff has sufficiently alleged a taking under the Illinois Constitution." *Id.* ¶ 16.

For example, in *LaSalle Bank Nat'l Ass'n v. City of Oakbrook Terrace*, relying on federal case law, the Illinois Appellate Court explained that prior to bringing a state takings claim, a property owner must submit a development plan and seek variations from the municipality:

> "[T]he party alleged to be aggrieved must demonstrate, at a minimum, that there was a rejected development plan. Moreover, where a regulatory scheme offers the possibility of a variance, the property owner "must go beyond submitting a plan for development and actually seek such a variance to ripen his claim."

393 Ill. App. 3d 905, 911 (2d Dist. 2009) (citing *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454 (9th Cir. 1987); *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 736-37 (1997)).

Count III is not ripe because Plaintiffs allege no development plans and no requests to the Village for any of the available relief authorized under the Ordinance. Plaintiffs cannot allege a taking based on the diminution of value of only a portion of their property (Compl. ¶¶ 144). And Plaintiffs ignore the express provisions of the Ordinance and base their claim on conclusory allegations, all as set forth in Section II.C above. Thus, Count III should be dismissed.

## B. Plaintiffs Have Not Plead an Illinois Substantive Due Process Violation (Count I)

In Count I, Plaintiffs claim that the Ordinance should be declared facially invalid because the Village failed to properly consider the *LaSalle/Sinclair* factors when adopting the Ordinance. Compl. ¶¶ 76, 123. Plaintiffs misapply the *LaSalle/Sinclair* factors, which do not apply at all to facial challenges to zoning text amendments. Count I should be dismissed because Plaintiffs have not plead a proper facial substantive due process challenge to the Ordinance under Illinois law.

### 1. *The LaSalle/Sinclair Factors Are Not Applicable to Facial Challenges*

The *LaSalle/Sinclair* factors are an eight-factor test adopted by the Illinois Supreme Court to evaluate as-applied zoning challenges, six of which were set forth in the seminal Illinois zoning case on as-applied zoning challenges, *LaSalle National Bank v. County of Cook*, 12 Ill. 2d 40 (1957). Two other factors were added to the test by the Illinois Supreme Court in *Sinclair Pipe Co.*

*v. Village of Richton Park*, 19 Ill. 2d 370 (1960). The purpose of the *LaSalle/Sinclair* factors is to give the courts a tool to determine whether specific zoning decisions are fair to "the owner of the subject property, owners of surrounding properties, and the public." *Harvard State Bank v. County of McHenry*, 251 Ill. App. 3d 84 (1993).

Critically, however, the *LaSalle/Sinclair* factors do not apply here because they apply only to as-applied zoning challenges, and not to facial challenges to zoning text amendments such as the Lakefront Regulations in the Ordinance. *Napleton v. Village of Hinsdale*, 229 Ill.2d 296, 319 (2008). In *Napleton*, the Court explained, "[t]he difference between a facial and an as-applied zoning challenge is significant…" and "if the same evidentiary standard were used in each type of challenge, there would be no difference between these challenges, leading to the absurd result that a zoning ordinance could never be generally valid but invalid as to a particular piece of property; instead, it would be either valid as to all or invalid as to all." *Id.* at 318-319. Thus, Plaintiffs' claims that the Ordinance violates the *LaSalle/Sinclair* factors are completely misplaced.

Instead, when evaluating facial challenges to a zoning ordinance, a plaintiff must allege that the ordinance is invalid in all circumstances. *Id.* at 305. "A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully." *Id.* "The fact that the enactment could be found unconstitutional under some set of circumstances does not establish its facial invalidity. *Id.*" Further, an ordinance is entitled to a strong presumption of validity and will withstand scrutiny if there is any conceivable rational basis supporting the ordinance. See *Heller v. Doe,* 509 U.S. 312, at 319-320 (1993). "[W]here it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a [zoning] classification, the legislative judgment must be conclusive." *Laramore v. Illinois Sports Facilities, No. 89 C 1067*, 1996 U.S. Dist. LEXIS 3964, at *65 (N.D. Ill. Mar. 29, 1996) (citing *American*

*Nat. Bank and Trust Co. v. City of Chicago*, 209 Ill. App. 3d 96, 117 (1st Dist. 1990).

Here, Plaintiffs do not attempt to plead that the Ordinance is invalid in all circumstances for all lakefront properties. While the Complaint contains some conclusory allegations about the impact of the Ordinance on Plaintiffs' 25 properties, it contains no allegations about the other 87 properties along the lakefront. Compl., ¶ 7

        2.    *Plaintiffs' Substantive Due Process Claim Cannot be Interpreted as a Valid As-Applied Challenge*

Even if Count I is somehow interpreted as an as-applied challenge, Plaintiffs' claim still suffers from at least three other fatal defects.

First, as with the takings claims, a plaintiff cannot bring an as-applied challenge to a zoning ordinance unless it has first pursued variations and other relief allowed by the municipality. *See Bright v. Evanston*, 10 Ill. 2d 178, 186 (1956). "Where the claim is merely that the enforcement or application of a particular classification to the plaintiff's property is unlawful and void, and no attack is made against the ordinance as a whole, judicial relief is appropriate only after available administrative remedies have been exhausted." *Id.* at 185.

Second, Plaintiffs wrongly assert that the Village Council was required to conduct a *La Salle/Sinclair* analysis before adopting the Ordinance. Compl., p¶¶ 74, 75. There is no case law or statute that mandates that village boards conduct some type of *LaSalle/Sinclair* analysis prior to adopting a zoning regulation. This is because it is merely an evaluation method limited to use by courts *post hoc* to determine whether a zoning determination operates unconstitutionally as applied to a particular parcel of property and a particular development proposal. *See La Salle Nat'l Bank v. County of Cook*, 12 Ill. 2d 40, 46 (1957); *Strauss v. City of Chi.*, 2022 IL 127149, ¶35 (explaining that the "*La Salle* factors are applied to determine whether a zoning action is reasonably related to a legitimate government interest and is a reasonable means to achieve that purpose.").

Moreover, any supposed requirement for the Village Council to consider the *LaSalle/Sinclair* factors prior to adopting the Ordinance is undermined by the fact that a trustee's reasons for voting for a text amendment are irrelevant when evaluating the constitutionality of the amendment. *Strauss v. City of Chicago*, 2021 IL App (1st) 191977 ¶ 68 (an "[alderman's] personal motives as someone who determines policy are not part of the analysis."); see also *Drury v. Vill. of Barrington Hills*, 2018 IL App (1st) 173042, ¶ 99. Thus, whether the Trustees engaged in a thorough analysis of the Ordinance under the *LaSalle/Sinclair* factors, or whether they applied the standards at all, is legally irrelevant.

Third, there is no way to conduct a *La Salle* factor analysis because Plaintiffs failed to identify in the Complaint what properties they own and which are negatively impacted by the Ordinance. Plaintiffs identify themselves and allege they own property in the Village, but they do not list or otherwise identify what parcels are at issue. Compl., p. 1 & ¶¶ 1,3. Thus, there is no way to evaluate whether the ordinance effectuates a substantive due process violation as-applied to Plaintiffs' properties.

Accordingly, Plaintiffs have not properly alleged a facial or an as-applied challenge to the Ordinance on substantive due process grounds. Thus, Count I should be dismissed.

### IV. Conclusion

For the reasons set forth above, the Complaint should be dismissed.

Peter M. Friedman
Benjamin L. Schuster
Elrod Friedman LLP
325 N. LaSalle St., Suite 450
Chicago, IL 60654
312-528-5200
peter.friedman@elrodfriedman.com
benjamin.schuster@elrodfriedman.com

DEFENDANT
VILLAGE OF WINNETKA

By: _____
One of its attorneys

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on **June 12, 2024,** a true and correct copy of the foregoing was electronically transmitted using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

*/s/*